**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **REZA SADEGHIAN, M.D.,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **vs.** | : **CIVIL ACTION NO. 18-00009-JB-B** |
| | : |
| **UNIVERSITY OF SOUTH ALABAMA,** | : |
| ***et al.,*** | : |
| | : |
| **Defendants.** | : |

## REPORT AND RECOMMENDATION

This case is before the Court on Defendants University of South Alabama ("South"), Dr. Franklin Trimm ("Trimm"), and Dr. Sophia Goslings' ("Goslings") Motion to Dismiss Amended Complaint.[1] (Doc. 20). This motion, which has been fully briefed and is ripe for resolution, has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Defendants' Motion to Dismiss (Doc. 20) be granted in part and denied in part, as set forth below.

---

[1] Plaintiff also named Dr. Samuel A. McQuiston as a defendant in his amended complaint, but McQuiston has not been served. Defendants' motion to dismiss Plaintiff's claims against this Defendant is addressed herein.
(Continued)

## I. **Background Facts**[2]

Plaintiff Dr. Reza Sadeghian ("Sadeghian" or "Plaintiff") commenced this action on January 12, 2018. (Doc. 1). In Plaintiff's amended complaint filed on March 7, 2018, Plaintiff asserts the following claims against Defendants: a petition for a writ of mandamus (Count I) against Trimm and South; a Title IX gender discrimination/sexual harassment claim (Count Two) against Goslings, Trimm, and South; a § 1983 equal protection claim (Count Three) against Goslings, Trimm, and South; and a Title IX retaliation claim against Trimm (Count Four). (Doc. 17 at ¶¶ 17-39; Doc. 17 at 12 ¶3).

According to Plaintiff, on July 1, 2014, he entered into a contract with South to work and train in South's Pediatric Residency Program (hereinafter "the Program"). (Doc. 17 at ¶11). The parties renewed the contract annually for three years until Plaintiff's completion of the Program in June 2017. (Id.).

During Plaintiff's first year of residency in the Program, Dr. Sophia Goslings, one of the supervising physicians under which Plaintiff trained and the Associate Program Director of the residency program, subjected Plaintiff to unwanted sexual advances. (Id. at ¶¶13-14). In August 2014, Plaintiff worked an inpatient clinical rotation under the supervision of Dr. Goslings. (Id.).

---

[2] For purposes of resolving Defendants' motion to dismiss, the Court accepts as true the facts alleged in Plaintiff's amended complaint.

During that rotation, Dr. Goslings was overly friendly to Plaintiff and took opportunities to touch him unnecessarily and sit uncomfortably close to him. (Id.). Dr. Goslings invited Plaintiff to her house after hours and invited him to call her. (Id.). Plaintiff was uncomfortable with Dr. Goslings' conduct. (Id.).

On December 1, 2014, Plaintiff met with Dr. Trimm, the Pediatric Residency Program Director, for his first semiannual evaluation. At the meeting, Plaintiff received praise from Dr. Trimm and was told that he had met all of his milestones. (Id. at ¶¶15-16).

In December 2014 and January 2015, Plaintiff again worked under Dr. Goslings. (Id.). During that time, Dr. Goslings spent an inordinate amount of time asking Plaintiff questions about his personal life while touching him; she invited him to eat with her or to accompany her to other activities, including a pottery/ceramics class; she continued to invite him to her house; she touched Plaintiff's hands while talking about patients; she made a point to sit next to him and touch his leg; and she put her hand over his shoulder. (Id.).

In an attempt to thwart Dr. Goslings' unwanted advances, Plaintiff told Goslings that he was involved in a relationship with someone else, and Goslings quizzed him in detail about that relationship. (Id. at ¶¶17-20). After that conversation, Goslings became hostile and critical of Plaintiff each time they worked together, while continuing the unwanted touching. (Id.).

3

During his second year of residency, Dr. Goslings worked with Plaintiff for one or two weeks but would not provide an evaluation of him. (Id.). At the following semiannual meeting with Dr. Trimm, Trimm treated Plaintiff much more critically than before. (Id.).

In December 2016, Goslings evaluated Plaintiff and provided a very negative evaluation, after working with him for only three days. (Id.). In January 2017, Plaintiff worked with Goslings again for another three days, and Plaintiff asked for feedback from her, which she refused, claiming that she had not worked with him long enough. (Id.). During that time, Goslings subjected Plaintiff to uncharacteristically and artificially low evaluations, or she withheld evaluations. (Id.). Goslings also schemed to taint Plaintiff's performance in the eyes of Trimm, the Program Director, by supplying Trimm with false and unwarranted information regarding Plaintiff's performance. (Id.). Plaintiff understood from Goslings' words and conduct that his evaluations and standing in the program would improve if he ceased resisting her advances. (Id.).

During Plaintiff's second year of residency, he had a semiannual meeting with Trimm wherein Plaintiff asked Trimm about Gosling's poor evaluations and behavior toward him. (Id. at ¶¶ 21-22). In response, Trimm threatened to hit Plaintiff "with a 4x4" or kick him out of the program. (Id.). Trimm informed Plaintiff that he was not there to "change the culture." (Id.).

During the semiannual meeting with Trimm in December 2016 or January 2017, Plaintiff told Trimm about Gosling getting too close

4

to him and touching him and that Gosling's poor evaluations were
reprisals for Plaintiff having declined her advances. (Id.). Trimm
again responded that Plaintiff was there to listen and not "change
the system," and Plaintiff understood from Trimm's response that
his complaints would not be acted upon and that it was not in his
interest to continue to protest. (Id.).

On February 8, 2017, Trimm placed Plaintiff on disciplinary
probation for alleged shortcomings in Plaintiff's performance,
purportedly evidenced by his scores during his first, second, and
third years on a practice test called the In-Training Exam (ITE),
which is developed and administered by the American Board of
Pediatrics as a means of self-assessment for residents to guide
their training. (Id. at ¶¶23-24). Trimm misused the ITE exam
scores as a pretext to institute probation, violating the
admonitions of the American Board of Pediatrics against such use.
(Id.).

At a meeting on February 8, 2017, Plaintiff asked Dr. Trimm
why a similarly-situated female resident with similar scores was
not placed on probation, and Dr. Trimm told Plaintiff that if he
questioned the system, he would be "dismissed," especially given
that he was on probation. (Id. at ¶¶ 24-26). Trimm failed to give
Plaintiff an opportunity to present his own information to the
Program Director prior to the institution of the probation. (Id.).

Plaintiff successfully completed his probation during his
third year of residency and completed the program. (Id. at ¶¶27-
28). Plaintiff applied for a license to practice medicine in the

state of California and was required to disclose that he was subject to probation while training in the Program. (Id.). Every jurisdiction in the United States required similar disclosures as a prerequisite to licensure, which limited Plaintiff's access to fellowship training opportunities and licensure to practice medicine. (Id.).

Dr. Sadeghian anonymously notified Defendant South's Graduate Medical Education office about Dr. Gosling's sexual harassment via an online "New-Innovations" website.[3] (Id. at ¶¶29-31). The online

---

[3] Plaintiff's online notification (Doc. 17 at ¶29) stated:

> I am writing as a complaint against an Attending physician in the Pediatric Residency Program at Children's and Womens Hospital, Dr. Sophia Gosling. I have experienced and been witness to inappropriate behavior particularly with the male residents in the program. She has made me uncomfortable on more than one occasion with her interest in my personal life, her request to engage in activity outside of the hospital, her comments on my social media postings and her constant touching when she was interacting with me. I have noticed similar behavior, particularly the touching, with other residents. This had made me very uncomfortable and I know that other residents find it uncomfortable as well, as it has been spoken about among us. I responded by trying not to engage with her in order to avoid these uncomfortable interactions. After I did not respond to her advances I noticed a drastic change in her demeanor towards me, becoming hostile and reactive. I did not link these two things together until recently when speaking with other personnel in the hospital it was brought to my attention that a similar situation occurred in a previous year, where she engaged

(Continued)

complaint was directed to Dr. Samuel A. McQuiston, who was the
Associate Dean for Graduate Medical Education at South and the
Designated Institutional Official charged with ensuring compliance
with ACGME requirements. (Id.).  According to Plaintiff, South
failed to investigate or otherwise address the complaint submitted
by Plaintiff.  (Id.).

In response to Plaintiff's amended complaint, on March 21,
2018, Defendants South, Trimm, and Goslings moved to dismiss the
amended complaint pursuant to Rule 12(b)(1) and (6), on the basis
of lack of jurisdiction to issue a writ of mandamus, preemption,
Eleventh Amendment immunity, statute of limitations, and failure
to state a claim.  This motion has been fully briefed and is now
ready for resolution.  (Doc. 20).

## II. Standard of Review

A defendant may move to dismiss a complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has
failed to state a claim upon which relief may be granted.  "The
standard of review for a motion to dismiss is the same for the
appellate court as it [is] for the trial court." Stephens v. Dep't

---

in a physical relationship with a male
resident and then became very angry and
hostile towards the resident, making "his life
hell" when he ended the relationship. As the
Associate program director residents are
fearful of speaking up against her and
exerting their rights to a hostile free work
environment. Something should be done to
address this. Thank you for addressing my
concerns.

of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990).
"When considering a motion to dismiss, all facts set forth in the
plaintiff's complaint 'are to be accepted as true and the court
limits its consideration to the pleadings and exhibits attached
thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th
Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510
(11th Cir. 1993)). All "reasonable inferences" are drawn in favor
of the plaintiff. St. George v. Pinellas County, 285 F.3d 1334,
1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state
a claim, the complaint "does not need detailed factual
allegations"; however, the "plaintiff's obligation to provide the
'grounds' of his 'entitle[ment] to relief' requires more than
labels and conclusions, and a formulaic recitation of the elements
of a cause of action will not do. . . . Factual allegations must
be enough to raise a right to relief above the speculative level
. . ., on the assumption that all the allegations in the complaint
are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007) (internal citations omitted). The
plaintiff must plead "enough facts to state a claim that is
plausible on its face." Id. at 570. Unless a plaintiff has
"nudged [his] claims across the line from conceivable to
plausible," the complaint "must be dismissed." Id.

"[U]nsupported conclusions of law or of mixed fact and law"
will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple
v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Marsh v.
Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).
"[W]here the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged—but it has not 'show[n]' — that the pleader is entitled to
relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting
Fed. R. Civ. P. 8(a)(2)).  The U.S. Supreme Court has suggested
that courts adopt a "two-pronged approach" when considering
motions to dismiss: "1) eliminate any allegations in the complaint
that are merely legal conclusions; and 2) where there are well-
pleaded factual allegations, 'assume their veracity and then
determine whether they plausibly give rise to an entitlement to
relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283,
1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664).
Importantly, "courts may infer from the factual allegations in the
complaint 'obvious alternative explanation[s],' which suggest
lawful conduct rather than the unlawful conduct the plaintiff would
ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

## III. **Analysis**

In their brief in support of their motion to dismiss,
Defendants argue that Count One of Plaintiff's amended complaint
is due to be dismissed because the Court lacks jurisdiction to

9

issue a writ of mandamus to a state officer, and that Counts Two through Four are due to be dismissed for a variety of reasons, including failure to state a claim upon which relief can be granted, qualified immunity, and expiration of the applicable statute of limitations. (Doc. 20 at 6-29). For the reasons that follow, the Court finds that Defendants' Motion to Dismiss is due to be granted in part and denied in part, as set forth herein.

### A. **Petition for a Writ of Mandamus (Count One)**.

In their brief, Defendants argue that Count One of Plaintiff's Amended Complaint must be dismissed because the Court lacks jurisdiction to issue a writ of mandamus to a state officer, and, further, that Plaintiff has failed to show that he has a clear legal right to relief sought and no other remedy available.[4] (Doc. 20 at 7). Plaintiff responds that the Court has supplemental jurisdiction to issue a writ of mandamus to the state officials named as Defendants in this case, and that, alternatively, the Court may treat the petition as a request for injunctive relief. (Doc. 27 at 2-4).

In Count One of the Amended Complaint, Plaintiff alleges that Defendant Trimm, a state official, violated the rules and

---

[4] Having found that the Court lacks jurisdiction to issue a writ of mandamus in this case, the Court need not address the remainder of Defendants' arguments concerning the prerequisites of issuing a writ of mandamus.

regulations of the university in placing Plaintiff on probation; that Trimm failed to follow the procedure for placing a resident on probation, as set out in Defendant South's Graduate Medical Education Policies and Procedures manual; that Trimm failed to notify Plaintiff of the proposed probation in writing in a timely manner; that Trimm violated South's rules and regulations when he failed to give Plaintiff the mandatory opportunity to give information to the program director or residency training committee in defense prior to the imposition of probation; and that Trimm acted beyond his authority, arbitrarily, fraudulently, and/or in bad faith with respect to these actions. (Doc. 17 ¶32). Plaintiff requests that the Court issue a writ of mandamus directing Defendant Trimm, or his Program Director successor, to rescind Plaintiff's probation and remove it from his record (Doc. 17 ¶32) and that the Court grant equitable relief in the form of an order requiring Defendant South to remove the probation from his record. (Id. at 12 ¶5).

The law is settled that "[f]ederal mandamus is available only to 'compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" Bailey v. Silberman, 226 Fed. Appx. 922, 924 (11th Cir. 2007) (quoting 28 U.S.C. § 1361). "Federal courts have no jurisdiction to issue writs of mandamus directing a state court and its judicial officers in the performance of their duties where mandamus is the only

relief sought." Id. (citing Moye v. Clerk, DeKalb County Superior Court, 474 F.2d 1275, 1276 (5th Cir. 1973)). Because the Defendants named in Plaintiff's Amended Complaint are not officers or employees of the United States or any agency thereof, the Court lacks jurisdiction to grant the mandamus relief requested.

That being said, where a Plaintiff's petition is more in the nature of a request for injunctive relief than mandamus, the Court may treat the petition as a request for injunctive relief. See Chandler v. Wiley, 2010 U.S. Dist. LEXIS 141649, *11, 2010 WL 5887799, *4 (M.D. Ga. Nov. 2, 2010), report and recommendation adopted, 2011 WL 767398 (M.D. Ga. Feb. 25, 2011) (citing Carter v. Hardy, 527 F.2d 314 (5th Cir. 1976); English v. Laidler, 2009 U.S. Dist. LEXIS 88063, 2009 WL 3153749, *1 (M.D. Ga. Sept. 24, 2009) (construing Plaintiff's request as more in the nature of a request for injunctive relief than mandamus, and noting, "[s]ection 1983 authorizes federal injunctive relief against state officials, whether executive, legislative, or judicial, to prevent violation of due process rights."); Thurman v. Jordan, 2010 U.S. Dist. LEXIS 58326, 2010 WL 2402900, *1 (M.D. Ga. June 14, 2010) (construing Plaintiff's request for mandamus relief against a state official as one for injunctive relief and allowing it to proceed).

Here, Plaintiff clearly seeks equitable/injunctive relief against Defendants South and Trimm with respect to expungement of the probation from his record. (Doc. 17 at 9-12). Therefore, the

Court finds that Plaintiff's claim is more in the nature of one for injunctive relief than mandamus, and it will be allowed to proceed.

Accordingly, Defendants' Motion to Dismiss Count One of the Amended Complaint is due to be granted, in part, as to Plaintiff's request for a petition for a writ of mandamus and denied, in part, as to Plaintiff's request for injunctive relief, as previously set forth herein.

### B. Title IX Claims (Counts Two and Four).

As set forth above, Plaintiff alleges in the amended complaint that he was employed as a medical resident at the University of South Alabama (Doc. 17, ¶3) and that Defendants Goslings and Trimm, as officials of the university, deliberately subjected him to discrimination under 20 U.S.C. § 1681(a) after he refused Goslings' sexual advances and after he reported Goslings' unlawful conduct to Trimm. (Doc. 17 at 9-10). Plaintiff alleges that Defendants were deliberately indifferent to his right to access educational opportunities, that they knew of Goslings' sexual harassment and retaliatory conduct and failed to take corrective action, and that Trimm likewise retaliated against Plaintiff, at the behest of Goslings, by placing him on probation after he complained of Goslings' conduct. (Id.).

In their motion to dismiss, Defendants argue that Plaintiff's complaint fails to state a claim under Title IX for several reasons. (Doc. 20 at 7). The Court will address each argument in turn.

## 1. Preemption.

First, Defendants argue that Plaintiff's Title IX sex discrimination claims are preempted by Title VII. (Doc. 20 at 8-11). Plaintiff counters that the question of whether Title VII preempts Plaintiff's private cause of action under Title IX for *quid pro quo* harassment and retaliation has not yet been decided in the Eleventh Circuit or by the Supreme Court, and, more importantly, that courts addressing such claims by plaintiffs who *are both employees and students* of a federally funded educational program, such as Plaintiff here, have held that their Title IX claims are not preempted by Title VII. (Doc. 27 at 8, 12).

"Title IX prohibits sex discrimination by recipients of federal education funding." Heatherly v. University of Ala. Bd. of Trs., 2018 U.S. Dist. LEXIS 118869, *62-63, 2018 WL 3439341, *19 (N.D. Ala. July 17, 2018) (citing Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005)). Title IX provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (1988). This prohibition on discrimination is enforceable through an implied cause of action. See Cannon v. Univ. of Chicago, 441 U.S. 677, 688-89 (1979). Sexual harassment is an actionable form of discrimination under Title IX, see Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992), and both damages and injunctive relief are available in private suits under

Title IX.  See Fitzgerald v. Barnstable School Comm., 555 U.S. 246, 255 (2009).  "Title IX's broad directive that no person may be discriminated against on the basis of gender appears, on its face, to include employees as well as students." Heatherly, 2018 U.S. Dist. LEXIS 118869 at *63, 2018 WL 3439341 at *19 (quoting North Haven Bd. of Ed. v. Bell, 456 U.S. 512, 520, 102 S. Ct. 1912, 72 L. Ed. 2d 299 (1982) (internal quotation marks omitted)).

Similarly, "Title VII prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of that individual's sex." Heatherly, 2018 U.S. Dist. LEXIS 118869 at *63 (citing 42 U.S.C. § 2000e-2(a)).

The question presented here is whether Title VII preempts a Title IX action for gender/sex discrimination asserted by a plaintiff who is *both a student and an employee* of a federally funded educational program.  As the parties have pointed out, neither the Supreme Court nor the Eleventh Circuit has addressed this issue, nor even the separate, broader issue of whether Title VII preempts a Title IX sex discrimination claim filed by a plaintiff who is solely an *employee* (and not a student) of a federally funded educational program.[5]

By way of background, Defendants correctly point out that the other Circuits that have addressed the issue of Title VII

---

[5] The Court need not decide the latter question, as only the former question is at issue here.  The Court discusses the latter question by way of background only.

preemption in the context of plaintiffs who are *solely employees* of a federally funded educational institution are split on the question. See generally Heatherly, 2018 U.S. Dist. LEXIS 118869, *63-65, 2018 WL 3439341, *20-21 (N.D. Ala. July 17, 2018) ("Neither the Supreme Court nor the Eleventh Circuit has addressed whether Title VII preempts Title IX when a plaintiff is alleging employment discrimination and Title VII provides a parallel remedy. A circuit split exists among the courts of appeals that have decided this question.") (collecting cases).  Defendants also correctly point out that the district courts in this Circuit addressing the issue, including this Court, have generally held that Title VII preempts a Title IX employment discrimination claim filed by a plaintiff who is *solely an employee* (and not a student) of a federally funded educational institution when Title VII provides a parallel remedy. See, e.g., Morris v. Wallace Cmty. College-Selma, 125 F. Supp. 2d 1315, 1343 (S.D. Ala. 2001) (holding that an athletic instructor's Title IX claim for employment discrimination was precluded by Title VII); Drisin v. Florida Int'l Univ. Bd. of Trustees, 2017 U.S. Dist. LEXIS 100247, *10, 2017 WL 3505299, *5 (S.D. Fla. June 27, 2017) (holding that a former professor's Title IX claim for gender discrimination was preempted by Title VII); Blalock v. Dale Cnty. Bd. of Educ., 84 F. Supp. 2d 1291, 1298 (M.D. Ala. 1999) (holding that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions" in a Title IX action for discrimination and retaliation filed by a female coach); Hazel v.

<u>School Bd. of Dade Cnty.</u>, 7 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998) (holding that "Title VII is the exclusive remedy for employment discrimination claims on the basis of sex in federally funded educational institutions" in a Title IX suit for discrimination/sexual harassment filed by a student activities director for a high school); <u>Gibson v. Hickman</u>, 2 F. Supp. 2d 1481, 1484 (M.D. Ga. 1998) (holding that "Title VII preempts employment discrimination claims for money damages brought under Title IX" in a Title IX action for sexual harassment filed by an employee of the school district).

The question presented here, however, is different. Here, the question concerns whether Title VII preempts a Title IX action for sex discrimination asserted by a plaintiff who is *both a student and an employee* of a federally funded educational program. While neither the Eleventh Circuit nor the Supreme Court has addressed this issue either, two district courts in this Circuit have addressed this issue and have held that it does not.

In <u>Morrison v. University of Miami</u>, 2016 WL 3129490, *1 (S.D. Fla. Jan. 20, 2016), a student in the university's Ph.D. program, who was also employed by the university as a research assistant for a professor, filed Title IX claims against the university and two professors for harassment based on sex, hostile educational environment, and retaliation after she refused the sexual advances of one of the professors and was subjected to retaliation when she reported the professor's conduct to the university. The court

rejected the defendants' arguments that the plaintiff's Title IX claims were preempted by Title VII, stating:

> The University asserts that although Plaintiff was both a graduate student and an employee of the University, her Title IX claims arose in the context of her employment as McGinn's RA. Id. Therefore, the University argues, Plaintiff may not circumvent Title VII's administrative scheme and proceed under Title IX simply because she failed to exhaust the administrative remedies under Title VII, which would be fatal to her claims. Id. In opposition, Plaintiff argues that neither the United States Supreme Court nor the Eleventh Circuit Court of Appeals have held that Title VII pre-empts Title IX in all circumstances. D.E. 36. Plaintiff asserts that all of the cases relied upon by the University involve plaintiffs who were solely employees of an educational institution where the alleged sexual-discrimination and retaliation claims arose. Id. Plaintiff contends that because Plaintiff was both a Ph.D. student who was, at times, concurrently employed by the University, she is entitled to the protections under both Title VII and Title IX, but she has instead opted to pursue her claims through Title IX and the Florida Civil Rights Act ("FCRA"). Id.

> According to Plaintiff's Complaint, Plaintiff was both a graduate student pursuing a Ph.D. in Philosophy and was employed as a Resident Assistant during the period of the alleged sexual harassment and retaliation. D.E. 1 ¶ 5. The Court agrees with Plaintiff that none of the authorities cited by the University are analogous to the facts of this case, where a plaintiff was concurrently an employee and a student. Based upon the lack of controlling authority and in light of the public policy behind these statutory schemes, the Court takes note of Plaintiff's argument that "[t]o deprive [Plaintiff] of the right to pursue her Title IX claims for the educational detriment she suffered as a result of

> Defendant's wrongdoing would unfairly punish
> her for being employed by the same institution
> where she was also enrolled as [a] student."
> Accordingly, Defendant's Motion to Dismiss
> Counts I, II, and III is DENIED.

Morrison, 2016 WL 3129490 at *5.

Likewise, in Wilborn v. Southern Union State Cmty. Coll., 720
F. Supp. 2d 1274, 1304 (M.D. Ala. 2010), a female student in a
summer truck driving program filed a claim for sexual harassment,
discrimination, and retaliation in violation of Title VII and Title
IX against a community college, the Alabama Department of Education
and Community Affairs (ADECA), the Alabama Department of
Postsecondary Education (ADPE), and certain program instructors.
Because the program involved a combination of classroom
instruction and driver training and ostensibly operated acted as
an employment agency,[6] the court held that the plaintiff's Title
IX sexual harassment claim was not preempted by Title VII.
According to the court:

> Wilborn's Title IX claims mirror those
> she raises pursuant to Title VII. . . .
> Defendants argue that Wilborn's Title IX
> claims are preempted by Title VII. . . .
>
> "Title IX prohibits sex discrimination by
> recipients of federal education funding."
> Jackson v. Birmingham Bd. of Educ., 544 U.S.
> 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361
> (2005). . . . The Supreme Court has "held that
> Title IX implies a private right of action ...

---

[6] It was undisputed that the program was an "educational program"
for purposes of Title IX. Wilborn, 720 F. Supp. 2d at 1302 n.22.
In addition, the court found that a jury question was presented on
the issue of whether the program operated as an employment agency
with respect to the plaintiff. Wilborn, 720 F. Supp. 2d at 1295.

[and] that it authorizes private parties to seek monetary damages for intentional violations of Title IX." Id. (citations omitted).

Despite the broad language of Title IX, some circuit courts have held "that Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination." Lakoski v. James, 66 F.3d 751, 755 (5th Cir. 1995); see also Delgado v. Stegall, 367 F.3d 668, 670 (7th Cir. 2004) ("[S]exual harassment of university employees is not actionable under Title IX if the employee could obtain relief under Title VII."). In reaching this holding, the Fifth Circuit Court of Appeals accepted that, "[a]lthough phrased differently, both Title VII and Title IX protect individuals from employment discrimination on the basis of sex." Lakoski, 66 F.3d at 756. But the court also found that "the Title IX right to be free from sex discrimination in employment is no different from the Title VII right." Id. Thus, in most cases, an employment discrimination claim cognizable under Title IX could also be asserted under Title VII. Working from this finding, the court explained that if employment discrimination that violates Title VII could be asserted under Title IX, "a complainant could avoid most if not all of [Title VII's] detailed and specific provisions of ... law [and] ... could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII." Id. at 755. . . .

Although neither the Supreme Court nor the Eleventh Circuit Court of Appeals has directly addressed this issue, "various district courts within the Eleventh Circuit ... have [persuasively] held that Title VII preempts Title IX and provides the exclusive remedy for employment discrimination claims against federally funded education programs." Schultz v. Bd. of Trustees of Univ. of West Florida, 2007 WL 1490714 at *2 (N.D. Fla. May

> 21, 2007) (Smoak, J.) (citing <u>Hankinson v.
> Thomas County Sch. Dist.</u>, 2005 U.S. Dist.
> LEXIS 25576 (M.D. Ga. Oct. 28, 2005) (Lawson,
> J.); <u>Morris v. Wallace Cmty. College-Selma</u>,
> 125 F. Supp. 2d 1315 (S.D. Ala. 2001)
> (Vollmer, J.); <u>Blalock v. Dale County Bd. of
> Educ.</u>, 84 F. Supp. 2d 1291 (M.D. Ala. 1999)
> (DeMent, J.); <u>Hazel v. School Bd. of Dade
> County</u>, 7 F. Supp. 2d 1349 (S.D. Fla. 1998)
> (Moore, J.); <u>Gibson v. Hickman</u>, 2 F. Supp. 2d
> 1481, 1484 (M.D. Ga. 1998) (Owens, J.)).
>
>     This court, however, need not reach the
> preemption issue, as it finds that Wilborn's
> case is distinguishable from those cited
> above. Unlike the plaintiffs in those cases,
> all of whom were employees asserting claims
> against their employers, Wilborn is a student
> asserting claims against a federally funded
> education program. Moreover, although her
> Title VII and Title IX claims are based on the
> same set of facts, the latter set of claims
> clearly assert discrimination with respect to
> her education, not her employment. <u>Cf. Delgado
> v. Stegall</u>, 367 F.3d 668, 670 (7th Cir. 2004)
> ("We cannot find any cases dealing with the
> question but it seems to us that harassment of
> a student interferes with her educational
> experience whether or not she is also a part-
> time employee."). Unlike Title IX, Title VII
> provides no cause of action for discrimination
> that interferes with an individual's
> education, and thus cannot be read as
> preempting such a claim. For this reason, the
> court rejects defendants' preemption
> argument.

<u>Wilborn</u>, 720 F. Supp. 2d at 1302-04.   The Court agrees with our

sister district courts in <u>Morrison</u> and <u>Wilborn</u> that a Title IX sex

discrimination claim filed by a plaintiff who is *both a student*

*and an employee* of a federally funded educational program is

materially different than a Title IX sex discrimination claim filed

by a plaintiff who is *solely an employee* of the federally funded educational program.

The Court also finds persuasive the sound reasoning of other courts addressing this issue that have found that a student-employee's Title IX sex discrimination claim is not preempted by Title VII. See, e.g., <u>Doe v. Mercy Catholic Med. Ctr.</u>, 850 F.3d 545, 549, 564 (3d Cir. 2017) (distinguishing <u>Lakoski</u> and holding that a medical resident could proceed with a private cause of action under Title IX for retaliation and *quid pro quo* harassment against a private hospital, stating that the issue of whether the plaintiff could also proceed under Title VII was "of no moment," as Congress provided a "variety of remedies, at times overlapping, to eradicate private-sector employment discrimination."); <u>Lipsett v. Univ. of Puerto Rico</u>, 864 F.2d 881, 897 (1st Cir. 1988) (recognizing a private Title IX cause of action by a medical resident in a university's medical residency program); <u>Doe v. Prairie View A&M Univ.</u>, 2018 U.S. Dist. LEXIS 69757, *1, 2018 WL 1947804, *4 (S.D. Tex. Apr. 25, 2018) (finding <u>Lakoski</u> inapposite and holding that the plaintiff, who was a student and an employee in the research center, presented a "special case under Title IX;" that "[w]hen such a student endures sexual harassment in her job, she simultaneously experiences harms relating to her employment and to her education;" that "Title VII alone cannot remedy the full range of harms;" that the plaintiff was "at risk of being

22

'denied the benefits of ... [her] education program,' per 20 U.S.C. § 1681(a), in a way that the professor in Lakoski was not;" and that "[u]nlike Title IX, Title VII provides no cause of action for discrimination that interferes with an individual's education, and thus cannot be read as preempting such a claim.") (citing Wilborn, 720 F. Supp. 2d 1274 (M.D. Ala. 2010)).

Here, Plaintiff alleges that he was a medical resident at the University of South Alabama, that he was enrolled in the university's medical residency program at the time of the alleged discrimination/sexual harassment and retaliation, that he was employed by the university as a medical resident, and that he was a student receiving educational training, attending lectures, studying medical and scholarly literature, making and attending case presentations, and taking annual examinations. (Doc. 17 ¶¶3, 10). Defendants do not dispute that the university is an educational institution, as defined by 20 U.S.C. § 1681(c), and is subject to the requirements of Title IX as a condition of receiving federal funding, nor do Defendants dispute that Plaintiff's medical residency program had an "educational component." (Doc. 28 at 6 n.3). Defendants simply argue that the Court should follow the reasoning of such cases as Lakoski v. James, 66 F.3d 751, 755 (5th Cir. 1995), and Drisin v. Fla. Int'l Univ. Bd. of Trustees, 2017 U.S. Dist. LEXIS 100247, *2, 2017 WL 3505299, *1 (S.D. Fla. June 27, 2017), which did not involve plaintiffs who were both students and employees of a federally funded educational program, but, rather, involved plaintiffs who were *solely employees* filing

employment discrimination claims against their employers.  Thus, as recognized by the court in Wilborn, 720 F. Supp. 2d 1274, 1304 (M.D. Ala. 2010), such cases are inapposite to the circumstances presented here.  Accordingly, the Court declines Defendants' invitation to follow Lakoski and other cases adopting its reasoning.[7]

In sum, although neither the Eleventh Circuit nor the Supreme Court has addressed the Title VII preemption question presented by the instant case, the Court is persuaded by the sound reasoning of our sister district courts in Morrison and Wilborn, as well as the Third Circuit in Mercy and the district court for the Southern District of Texas in Prairie View, as discussed herein.  Based on the foregoing, the Court finds that Plaintiff's claims under Title IX against Defendants for sex discrimination/sexual harassment and retaliation are not preempted by Title VII.  Accordingly, Defendants' motion to dismiss Plaintiff's Title IX claims on this basis is due to be denied.

### 2. Title IX Discrimination (Count Two).

Next, Defendants argue that Plaintiff's Title IX claim for discrimination/sexual harassment (Count Two) is due to be dismissed because Plaintiff's "allegations do not rise to the level

---

[7] Defendants also cite Slabisak v. University of Tex. Health Sci. Ctr. at Tyler, 2018 WL 1072511, at *2-3 (E.D. Tex. Feb. 27, 2018), in which the district court, relying on Lakoski, dismissed a former medical resident's Title IX hostile work environment and retaliation claims, finding them preempted by Title VII.  However, the Court is unpersuaded by Slabisak, because of its reliance on Lakoski, which the Court has found inapplicable here.

of sexual harassment." (Doc. 20 at 11). Specifically, Defendants argue that Title IX, like Title VII, applies the "severe and pervasive" standard to a sexual harassment claim and that Plaintiff's allegations show, at most, that Goslings sat close to Plaintiff, touched him on the hand, leg, and shoulder, and invited him to her house and to outside activities, which are neither severe nor pervasive enough to be actionable, either as *quid pro quo* harassment or hostile environment.[8] (Doc. 28 at 9). Defendants also argue that Plaintiff's allegations fail to show that any university official had actual knowledge of the sexual harassment. (Doc. 20 at 14).

Plaintiff responds that he has met the standard articulated in Doe v. Sch. Bd., 604 F.3d 1248, 1254 (11th Cir. 1993), for establishing liability under Title IX for sex discrimination, *i.e.,* that he has alleged that an official of the university had authority to take corrective measures on the school's behalf; that the official had actual notice of the alleged misconduct; and that the official was "deliberately indifferent" to the misconduct. (Doc. 27 at 15-17).

First, the Court notes that "Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those

---

[8] While the amended complaint could be more succinct, the Court finds that it has sufficiently alleged both *quid pro quo* sexual harassment and hostile environment sexual harassment, and the Defendants have addressed both. (Doc. 17 ¶¶ 8-31).

practices.'"  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998) (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979)).  It is clear that "sexual harassment is a form of discrimination for Title IX purposes. . . ."  Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 649–50 (1999).

In Wilborn, 720 F. Supp. 2d at 1302, the court set forth the requirements of a Title IX sexual harassment claim as follows:

> [T]he Court [in Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005)] held that "a damages remedy will not lie under Title IX unless an official who at minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." Id. "[M]oreover ... the response must amount to a deliberate indifference to discrimination." Id.
>
> Thus, to survive summary judgment on her Title IX sexual harassment claim—at least with respect to her claim for damages—Wilborn must produce sufficient evidence that: (1) an "appropriate person" at Southern Union or ADECA had actual notice of the discrimination, and (2) once an "appropriate person" had actual notice, that person was deliberately indifferent to the harassment. See Sauls v. Pierce County Sch. Dist., 399 F.3d 1279, 1284 (11th Cir. 2005). . . .

"Title IX unquestionably places on a school the duty not to permit teacher-student harassment," and "recipients violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct."  Davis, 526 U.S. at 643 (quoting Franklin v. Gwinnett Cty. Pub. Sch., 503 U.S. 60, 75 (1992)).  In addition, the school's response to sex discrimination must be "clearly

unreasonable in light of the known circumstances." Davis, 526
U.S. at 648.

### a. Hostile environment sexual harassment

As Defendants have pointed out, in a Title IX hostile
environment sexual harassment case, Plaintiff must also show that
the sexual harassment of which the funding recipient had actual
knowledge was "so severe, pervasive, and objectively offensive
that it can be said to deprive the victims of access to the
educational opportunities or benefits provided by the school."
Davis, 526 U.S. at 650. In Wilborn, 720 F. Supp. 2d at 1296, the
court held that "the objective severity of harassment should be
judged from the perspective of a reasonable person in the
plaintiff's position, considering all the circumstances." In
addition, the evidence of harassment should be "considered both
cumulatively and in the totality of the circumstances," requiring
"careful consideration of the social context in which particular
behavior occurs and is experienced by its target." Id. Further,
the "real social impact of workplace behavior often depends on a
constellation of surrounding circumstances, expectations, and
relationships which are not fully captured by a simple recitation
of the words used or the physical acts performed," and "[c]ommon
sense, and an appropriate sensitivity to social context, will
enable courts and juries to distinguish between teasing ... and
conduct which a reasonable person in the plaintiff's position would
find severely hostile or abusive." Id. (citations and internal
quotation marks omitted).

Citing <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1245-46 (11th Cir. 1999), a Title VII case, Defendants maintain that, in a Title IX hostile-environment sexual harassment case, harassing conduct does constitute discrimination unless the conduct is sufficiently severe or pervasive to "alter the conditions" of the victim's employment/education and create an abusive working/school environment. (Doc. 20 at 12-13). Defendants argue that, of the four factors identified in <u>Mendoza</u> for determining whether Goslings' sexual harassment objectively altered Plaintiff's terms or conditions of employment or his education, Plaintiff's allegations do not establish that the sexual harassment unreasonably interfered with Plaintiff's job or school performance.[9]

To the contrary, Plaintiff has alleged in the amended complaint that, for a period of approximately three years beginning in July 2014 (essentially the entire duration of his medical residency),[10] Defendant Goslings, the associate director of the

---

[9] While Defendants refer only to Plaintiff's work environment, it is both Plaintiff's school and work environment that are at issue here.

[10] Plaintiff alleges that "[r]esidency training is a specialized medical training that follows the trainee's (known as a "resident physician") graduation from medical school and is intended to qualify the resident physician for certification by the applicable specialty medical board." (Doc. 17 ¶8). Residency training is often referred to as "graduate medical education" by Defendant South. <u>Id.</u> "In general, the resident physician provides valuable medical services to the residency program in exchange for remuneration and educational training as to the knowledge and techniques that are applicable to the medical specialty in which the resident physician seeks certification. The training includes, (Continued)

pediatric residency program, whose job it was to educate, supervise, train, and prepare Plaintiff to sit for examination for board certification in pediatrics, instead subjected him to unwanted sexual advances and retaliated against him when he refused those advances by treating him with hostility, unwarranted criticism, unwarranted negative and low evaluations, by withholding evaluations and feedback, by tainting his perception in the eyes of the program director (Defendant Trimm), and by supplying Trimm with false information about Plaintiff's performance (Doc. 17 ¶¶ 10, 13-19). The amended complaint further alleges that Plaintiff noticed a drastic change in Goslings' demeanor toward him after he resisted her sexual advances (id. at ¶ 29), which advances included repeated and constant inappropriate touching of his hands, leg, and shoulder while discussing patient care; sitting uncomfortably close to him; inviting him to call her; inviting him to her house after hours; spending an inordinate amount of time questioning him about his personal life while touching him; and questioning him at length about his personal relationship with another person with whom Plaintiff pretended to be in a relationship in order to thwart Goslings' sexual advances. (Id. ¶¶ 13-17, 29). Goslings also insinuated to Plaintiff that

---

among other things, attending educational lectures, studying medical and scholarly literature, making and attending case presentations, and annual examinations. The residency program prepares a student to sit for examination for board certification in the area of medical specialty which is the focus of the program. In this case, the program was a pediatric residency program." Id. at ¶10.

the hostility and other retaliatory conduct would end if he stopped resisting her sexual advances.  (Id. ¶ 20).  The amended complaint further alleges that Goslings had a history of sexual harassment of at least one other medical resident student and that Goslings retaliated against that individual when he began to refuse her sexual advances and made "his life hell."  (Id. ¶29).  Plaintiff alleges that other residents witnessed Goslings' sexual harassment but were afraid to speak up against her.  (Id.).  The amended complaint further alleges that Plaintiff reported Goslings' sexual harassment to Defendant Trimm, the director of the residency program (Doc. 17, ¶¶19, 21, 22); that Trimm refused to listen to Plaintiff's complaints; that Trimm told Plaintiff that if he persisted, he would "hit him with a 4x4" or would kick him out of the program (Id. ¶21); that Trimm did not investigate the complaints or attempt to eradicate the discriminatory conduct; that Trimm told Plaintiff that he was not there to "change the culture" or "change the system" (Id. ¶¶21, 22); and that Trimm ordered Plaintiff to cease his complaints against Goslings or face dismissal from the program (Id. ¶24).  The amended complaint further alleges that Trimm eventually placed Plaintiff on probation, at the behest of Goslings, as a result of Plaintiff's complaints about Goslings' sexual harassment and retaliation. (Id. ¶¶11-20).

Plaintiff's allegations cannot be viewed in isolation.  The Court must consider the totality of the allegations and the context in which they are alleged.  Having done so, the Court finds that

the conduct alleged is objectively severe, pervasive, and offensive, particularly given the context of this case, which includes allegations that a medical resident student was forced to either accept the sexual advances of his supervising teacher-physician or suffer severe negative consequences to his education, training, and employability if he refused.  According to the allegations in the amended complaint, Plaintiff did refuse, which led to retaliation, including him being placed on probation.  One can reasonably infer from these allegations that Defendants' conduct interfered with Plaintiff's school performance and deprived Plaintiff "of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 650.  Indeed, this is precisely the type of egregious behavior that Title IX was designed to prevent.  See, e.g., Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 551 (3d Cir. 2017) (allegations that a female medical resident was pursued by the director of the residency program, that he asked about her personal life, that he found opportunities to see and speak with her more than would be expected, that he asked to meet with her at an out-of-town conference, that he touched her hand at work, that he invited her to travel with him, that he pressed against her body at a computer, that he became jealous when another physician expressed interest in her, that he treated her negatively when she refused his sexual advances, and that she was eventually terminated from the program when she complained of his sexual advances were sufficiently severe and pervasive to support a Title IX sexual harassment claim); Lipsett

31

v. Univ. of Puerto Rico, 864 F.2d 881, 914 n.24 (1st Cir. 1988),
aff'd, 759 F. Supp. 40 (D.P.R. 1991) (allegations that a female
medical resident was subjected to frequent taunting from male
supervisors and co-residents, that she was warned not to complain
or else face dismissal, that she was offered protection from the
harassment in exchange for sexual favors, that she was treated
with hostility when she refused the sexual advances, and that she
was placed on probation and eventually dismissed from the program
when she complained of the harassment were sufficiently severe and
pervasive to support a Title IX sexual harassment claim).   Thus,
Defendants' arguments that Plaintiff has failed to sufficiently
allege a hostile environment sexual harassment claim are without
merit.

### b. *Quid pro quo* **sexual harassment**

Next, Defendants cite Papelino v. Albany Coll. of Pharm. of
Union Univ., 633 F.3d 81, 89 (2d Cir. 2011), in support of their
argument that Plaintiff has failed to state a claim for *quid pro
quo* sexual harassment under Title IX because Plaintiff has not
alleged that the sexual harassment was sufficiently severe or
pervasive to alter the conditions of his employment (or in this
case, employment/educational environment).   (Doc. 20 at 11).   In
Papelino, the Second Circuit stated:

> [A]s under Title VII, a *quid pro quo* sexual
> harassment claim under Title IX requires proof of
> three elements: (1) the rejection of sexual
> advances; (2) a tangible school-related (as opposed
> to employment) consequence; and (3) a causal
> connection between the two. See Karibian v.
> Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994). In
> the education context, a tangible consequence

occurs when "some benefit or adverse action," such as a change in a grade, is made to depend upon providing sexual favors to someone in authority. Wills v. Brown Univ., 184 F.3d 20, 25 (1st Cir. 1999).

As previously discussed, Plaintiff, a medical resident/student-employee of the university, has alleged that, because he refused the repeated sexual advances of the associate director/supervising physician of his residency program (Goslings), she retaliated against him with hostility at school/work, with unwarranted criticism and negative and falsely low evaluations, by withholding evaluations and feedback, and by supplying Trimm, the director of the residency program, with false information about Plaintiff's performance, all of which eventually led to Plaintiff being placed on probation, a classification that remains on his record and continues to affect his licensure and ability to practice medicine. (Doc. 17 ¶¶10, 13-28). The Court finds that these allegations are sufficient to allege that Plaintiff suffered tangible, adverse school/employment consequences meted out by Goslings and Trimm because Plaintiff refused to accept Goslings' sexual advances. Thus, Defendants' arguments that Plaintiff's allegations fail to state a claim for *quid pro quo* sexual harassment are without merit.

### c. Actual Knowledge of the Sexual Harassment

Defendants next argue that Plaintiff cannot state a Title IX deliberate indifference claim because Plaintiff failed to allege that any university official had actual knowledge of the discrimination. (Doc. 20 at 14). The Court agrees with Plaintiff

that the allegations, discussed at length above, sufficiently establish that an appropriate person at the university, *i.e.,* Trimm, the program director, had actual knowledge of Goslings' alleged sexual harassment of Plaintiff, that Trimm was deliberately indifferent to the harassment, and that Trimm's response to the harassment was clearly unreasonable in light of the known circumstances.  Indeed, Plaintiff alleges that Trimm not only knew about Goslings' alleged sexual harassment of Plaintiff, but he threated Plaintiff with physical harm and dismissal from the program if Plaintiff did not keep quiet about the harassment. (Doc. 17 ¶21-22).  Thus, Defendants' arguments that Plaintiff has failed to sufficiently allege a Title IX sexual harassment claim on the basis of lack of actual knowledge by an appropriate person at the university are without merit.

For each of the foregoing reasons, Defendants' motion to dismiss Plaintiff's Title IX discrimination claim is due to be denied.

### 3. Title IX Retaliation (Count Four).

Next, Defendants argue that Plaintiff's allegations fail to state a claim under Title IX for retaliation.  Specifically, Defendants argue that Plaintiff did not engage in statutorily protected expression because Goslings' conduct did not constitute sexual harassment and because Plaintiff did not report sexual harassment to Trimm.

The Court applies the framework for Title VII retaliation claims to Plaintiff's Title IX retaliation claim.  See Bowers v.

Bd. of Regents of Univ. Sys. of Georgia, 509 Fed. Appx. 906, 912
(11th Cir. 2013).  Thus, in order to establish a *prima facie* case
of retaliation under Title IX, Plaintiff must show that (1) he
engaged in statutorily protected expression; (2) that Defendants
took action that would have been materially adverse to a reasonable
applicant; and (3) that a causal link existed between the two
events.  Id. (citing Burlington N. & Santa Fe Ry. v. White, 548
U.S. 53 (2006); Pennington v. City of Huntsville, 261 F.3d 1262,
1266 (11th Cir. 2001)).  To demonstrate causation, "a plaintiff
must show that the decision-makers were aware of the protected
conduct, and that the protected activity and the adverse actions
were not wholly unrelated."   Bowers, 509 Fed. Appx. 906, 912
(quoting Shannon v. BellSouth Telecomm., Inc., 292 F.3d 712, 716
(11th Cir. 2002)).

Defendants do not dispute the second and third prongs of
Plaintiff's retaliation claim, but, rather, simply state that
Goslings' conduct did not constitute sexual harassment and, thus,
Plaintiff was not engaging in a statutorily protected expression
when he complained to Trimm about Goslings' conduct.  (Doc. 20 at
21; Doc. 28 at 14).  To the contrary, the Court has already found
that the amended complaint sufficiently alleges Goslings' severe
and pervasive sexual harassment of Plaintiff and that Plaintiff
reported Goslings' conduct to Trimm, after which Trimm, at the
behest of Goslings, placed Plaintiff on probation in retaliation
for his complaints.  Thus, Defendants' argument that Plaintiff has
failed to sufficiently allege a Title IX retaliation claim because

he was not engaged in statutorily protected expression is without merit, and Defendants' motion to dismiss Plaintiff's Title IX retaliation claim is due to be denied.  See Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes internal complaints of sexual harassment to superiors.").

### 4. Individual Liability under Title IX.

Next, Defendants argue that the individual Defendants, Trimm and Goslings, cannot be held liable under Title IX because Title IX does not recognize a cause of action against individuals.[11] (Doc. 20 at 16).  As Defendants correctly point out, in Hill v. Cundiff, 797 F.3d 948 (11th Cir. 2015), the Eleventh Circuit reiterated that "Title IX is enforceable against institutions and programs that receive federal funds, but does not authorize suits against individuals."  Id. at 977 (citing Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 256 (2009) ("Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.") (citing Hartley v. Parnell, 193 F.3d 1263, 1270 (11th Cir. 1999) ("Individual school officials, such as Parnell, may not be held liable under Title IX.")); see also KF's Father v. Marriott, 2001 U.S. Dist. LEXIS 2534, *49, 2001 WL 228353, *15 n.23 (S.D. Ala.

---

[11] Plaintiff does not respond to this argument.

Feb. 23, 2001) ("the individual defendants are not subject to Title IX liability"); <u>Powers v. CSX Transp., Inc.</u>, 105 F. Supp. 2d 1295, 1311 (S.D. Ala. 2000)("[the Eleventh Circuit] has expressly rejected individual liability under Title IX. A Title IX claim can only be brought against a grant recipient ... and not an individual.") (citations and internal quotation marks omitted); <u>Brown v. Florida Gulf Coast Univ. Bd. Of Trustees</u>, 2018 U.S. Dist. LEXIS 193948, *20, 2018 WL 5971661, *8 (M.D. Fla. Nov. 14, 2018) ("Title IX . . . does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations.").

Moreover, "individuals cannot be sued under Title IX under *any* capacity," whether individual or official capacity.[12] <u>Greenwell v. University of Ala. Bd. of Trustees</u>, 2012 U.S. Dist. LEXIS 118917, *42, 2012 WL 3637768, *12 (N.D. Ala. 2012)(emphasis in original).

Accordingly, Defendants' motion to dismiss Plaintiff's Title IX claims (Counts Two and Four) against the *individual* Defendants, Goslings and Trimm, is due to be granted.  In addition, because Plaintiff's Title IX retaliation claim (Count Four) is asserted

---

[12] In the amended complaint, Plaintiff does not specify whether he is asserting claims against Defendants Trimm and Goslings in their official capacities, individual capacities, or both.  Therefore, the Court considers both.

(Continued)

*only* against the *individual* Defendant Trimm, and not South, that claim (Count Four) is due to be dismissed in its entirety.[13]

### C. <u>Section 1983 Claims (Count Three)</u>.

In the amended complaint (Count Three), Plaintiff asserts a claim under § 1983 against all Defendants[14] for discrimination on the basis of sex.  According to Plaintiff, while acting under color of state law, Defendants violated his rights under the equal protection clause of the Fourteenth Amendment through their acts of sexual harassment and retaliation. (Doc. 17 at 10 ¶¶37-38; Doc. 17 at 12 ¶3).  In their motion to dismiss Plaintiff's § 1983 claim, Defendants argue that Plaintiff's allegations against Defendant Trimm  fail to state an equal protection claim under § 1983 because (1) the allegations do not establish that Trimm personally participated in the constitutional deprivation or that there was a causal connection between Trimm's actions and the constitutional deprivation; (2) the allegations do not establish that Trimm's conduct was motivated by gender; and (3) the allegations of sexual harassment are too weak (*i.e.,* not sufficiently severe or pervasive) to rise to the level of actionable discrimination.  (Doc.

---

[13] Plaintiff has sufficiently alleged a Title IX gender discrimination/sexual harassment claim (Count Two) against South, and that claim remains.

[14] As previously discussed, while the amended complaint could be more succinct, Plaintiff seeks relief under § 1983 against Defendant South, Goslings, and Trimm based on the conduct of Goslings and Trimm and on South's failure to investigate the complaint made by Plaintiff on the university website.  (Doc. 17 at 12 ¶3; Doc. 17 at 7 ¶¶29-31).

20 at 16-17).   In addition, Defendants argue that Goslings and Trimm are entitled to qualified immunity.   (Doc. 20 at 18-20).

The statute, 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.  "Section 1983 allows persons to sue individuals or municipalities acting under the color of state law for violations of federal law."[15]  Hill v. Cundiff, 797 F.3d 948, 976 (11th Cir. 2015)  "One such law is the Equal Protection Clause, U.S. Const. amend. XIV, § 1, which confers a federal constitutional right to be free from sex discrimination."  Id. (citing Personal Adm'r of Mass. v. Feeney, 442 U.S. 256, 273 (1979)); see also Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir. 1995) ("Appellees have a constitutional right

---

[15] The parties do not dispute that the university and the individual Defendants were state actors and were acting under color of state law for the purpose of Plaintiff's claim.  See Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998)(To prevail on a claim under § 1983, a plaintiff must demonstrate: (1) that a person deprived plaintiff of a right secured under the Constitution or federal law, and (2) that such a deprivation occurred under color of state law.).

to be free from unlawful sex discrimination and sexual harassment in public employment.").

"[W]hen a public employee challenges an employment decision as an act of discrimination on the basis of race or sex, such a claim may also violate the constitutional right of equal protection." Oliviera v. City of Atlanta, Georgia, 2016 WL 10586169, *25 (N.D. Ga. Aug. 4, 2016), *report and recommendation adopted*, 2016 WL 10588045 (N.D. Ga. Oct. 14, 2016)(citing Cross v. Alabama, 49 F.3d 1490, 1507 (11th Cir. 1995)(citing Davis v. Passman, 442 U.S. 228, 235 (1979)).

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To establish a violation of the Equal Protection Clause, a "plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1180 (11th Cir. 2009). Specifically, a plaintiff must allege that "he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin." Alford v. Consolidated Gov't of Columbus, Ga., 438 Fed. Appx. 837, 839 (11th Cir. 2011) (citing Sweet v. Secretary Dep't of Corrs., 467 F.3d 1311, 1318-19 (11th Cir. 2006)); see also Oliviera, 2016 WL 10586169 at *25 ("In order to

establish a violation of the Equal Protection Clause in the employment context, a plaintiff must prove discriminatory motive or purpose.").

In cases such as the instant one, "the act of sexual harassment itself creates an inference that the harasser harbors a sexually discriminatory animus towards the plaintiff." Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1246 (11th Cir. 1998); accord Montoya v. Morgan, 2018 U.S. Dist. LEXIS 168593, *34, 2018 WL 4701795, *12 (N.D. Fla. Sept. 30, 2018). Indeed, "[w]hen a person sexually harasses another, i.e., makes comments or advances of an erotic or sexual nature, [the court] infer[s] that the harasser [is making] advances towards the victim because the victim is a member of the gender the harasser prefers." Llampallas, 163 F.3d at 1246 (quoting Fredette v. BVP Management Assocs., 112 F.3d 1503, 1505 (11th Cir. 1997) (internal quotation marks omitted). "Unless there is evidence to the contrary, . . . [the court] also infer[s] that the harasser treats members of the non-preferred gender differently—and thus that the harasser harbors an impermissible discriminatory animus towards persons of the preferred gender." Id. (internal quotation marks omitted)(citing Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982) ("In the typical case in which a male supervisor makes sexual overtures to a female worker, it is obvious that the supervisor did not treat male employees in a similar fashion.").

"This inference can be drawn regardless of the sexual orientation of the harasser, so long as the harassed victim is of the harasser's preferred gender."  Id. (citations omitted).

Moreover, the Eleventh Circuit has held that "a governmental official ... may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment."  Hill, 797 F.3d at 978 (quoting Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1250 (10th Cir. 1999); Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300-02 (11th Cir. 2007) (discussing government officials' liability under § 1983 arising from "right to be free from sex discrimination"); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (applying "deliberate indifference" standard for § 1983 deprivation of constitutional right to be free from sexual harassment).  "In order to prevail on a claim of deliberate indifference to sexual harassment, a plaintiff must prove the individual defendant 'actually knew of and acquiesced in' the discriminatory conduct."  Hill, 797 F.3d at 978 (citing Murrell, 186 F.3d at 1250).

## 1. Failure to state a claim under § 1983

First, Defendants argue that Plaintiff's equal protection claim against Defendant Trimm should be dismissed because respondeat superior liability is unavailable in a § 1983 action, and Plaintiff has failed to allege that Trimm personally participated in the constitutional deprivation or that there was

a causal connection between Trimm's actions and the constitutional deprivation. (Doc. 20 at 17). Defendants are correct that, "[f]or a supervisor to be individually liable for a subordinate's alleged violation of [an] Equal Protection Clause right, the supervisor must have either personally participate[d] in the alleged constitutional violation or there must be a causal connection between actions of the supervising official and the alleged constitutional deprivation." Weissenbach v. Tuscaloosa Cnty. School Sys., 2018 U.S. Dist. LEXIS 191248, *35, 2018 WL 5848047, *12 (N.D. Ala. Nov. 8, 2018) (quoting Hartley v. Parnell, F.3d 1263, 1268 (11th Cir. 1999) (internal quotation marks omitted)). A "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Cross, 49 F.3d at 1508.

In the present case, Plaintiff alleges that Trimm both personally participated in the alleged discrimination and that he had *actual* notice of it and failed to correct it. Specifically, the amended complaint alleges that, while acting under color of state law, Goslings supplied Trimm and other faculty members with "artificially low evaluations of [Plaintiff] and other false and unwarranted information" for the purpose of punishing Plaintiff for refusing her sexual advances (Doc. 17 ¶ 37); that Trimm, while acting under color of state law, placed Plaintiff on probation "at

the behest of Dr. Goslings," with *actual* knowledge that Goslings had made unwanted sexual advances on Plaintiff (id. ¶ 38); that Trimm used Plaintiff's ITE scores as a pretext for placing him on probation; and that, when questioned about why a similarly situated female resident with similar scores was not placed on probation, Trimm told Plaintiff that he would be dismissed if he questioned the system. (Id. ¶¶ 23-24). These allegations are sufficient to establish Trimm's personal involvement in the alleged discriminatory conduct, as well as a causal connection between Trimm's actions and the alleged discriminatory conduct, particularly the allegations of Trimm's actual knowledge of, and acquiescence in, Goslings' sexual harassment of Plaintiff and Trimm's deliberate indifference to Goslings' known sexual harassment. Therefore, these allegations are sufficient to state an equal protection claim under § 1983 against Defendant Trimm.

Next, Defendants argue that Plaintiff's § 1983 equal protection claim against Defendant Trimm fails because Plaintiff did not allege that Trimm's actions were motivated by gender. (Doc. 20 at 17). As stated, "[i]n order to establish a violation of the Equal Protection Clause, appellees must prove discriminatory motive or purpose." Cross, 49 F.3d at 1507-08. However, as stated, the amended complaint alleges that Plaintiff reported Goslings' sexual harassment to Trimm; that Trimm threatened Plaintiff to remain quiet about the sexual harassment;

that with actual knowledge of Goslings' sexual harassment of Plaintiff, Trimm placed Plaintiff on probation at the behest of Goslings; and that, when Plaintiff confronted Trimm and asked him why a similarly-situated female resident with similar ITE scores was not placed on probation, Trimm threatened him with dismissal. (Doc. 17 ¶¶ 21-24, 38).  The Court finds that these allegations are sufficient to allege that Trimm's motives (like Goslings') were gender related, and, thus, are sufficient to state a § 1983 equal protection claim against Trimm.

Next, Defendants argue that Plaintiff's allegations of sexual harassment are too weak to state an equal protection sexual harassment claim under § 1983.  As previously discussed with respect to Plaintiff's Title IX claim, applying a Title VII analysis, the allegations of sexual harassment in the amended complaint are sufficiently severe and pervasive to state a claim for gender discrimination/sexual harassment.  The Court likewise finds, for the same reasons discussed above, that Plaintiff's allegations of sexual harassment and gender discrimination are sufficiently severe and pervasive to state an equal protection claim under § 1983.  See Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983.").

Thus, Defendants' motion to dismiss Plaintiff's § 1983 claim on these grounds is due to be denied.

## 2. Qualified immunity under § 1983

Next, Defendants argue that both Defendants Trimm and Goslings are entitled to qualified immunity. (Doc. 20 at 18-20). Defendants argue that Goslings could not have had fair notice that her "over-friendly" behavior was unlawful and that, because Goslings' behavior was not clearly discriminatory, Trimm did not have notice that he was violating Plaintiff's constitutional rights. (Id. at 19). Plaintiff responds that Defendants cannot assert qualified immunity in their official capacities and that they are not entitled to qualified immunity in their individual capacities.[16] (Doc. 27 at 24-26).

As Defendants correctly point out, "[q]ualified immunity . . . offers complete protection for individual government officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hill, 797 F.3d at 978 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "When a court concludes the defendant was engaged in a discretionary function, the burden shifts to the plaintiff to show that the

---

[16] The Court notes that Defendants do not appear to be asserting qualified immunity as a defense to Plaintiff's claims against them in their official capacities. In any event, Defendants would not be entitled to the defense of qualified immunity in their official capacity. See Wiley v. Nobles, 2018 U.S. Dist. LEXIS 148068, *17, 2018 WL 4146135, *6 (M.D. Fla. Aug. 30, 2018)("The defense of qualified immunity is available to an official sued in his individual capacity but not to one sued in his official capacity.") (citing Fitzgerald v. McDaniel, 833 F.2d 1516, 1520 (11th Cir. 1987)).

defendant is *not* entitled to qualified immunity."   Id. (internal quotation marks omitted)(emphasis in original).

The parties do not dispute that Defendants Trimm and Goslings were acting in their discretionary capacity at all times relevant to this action.   Consequently, Plaintiff bears the burden of showing that Goslings and Trimm violated a constitutional right, and (2) that this right was clearly established at the time of the alleged violation.

A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.   Lewis v. City of W. Palm Beach, Fla.*,* 561 F.3d 1288, 1291–92 (11th Cir. 2009).

As discussed above, the amended complaint sufficiently alleges an equal protection violation by Trimm and Goslings arising out of Goslings' gender discrimination/sexual harassment targeting Plaintiff and Trimm's deliberate indifference to (and alleged complicity in) the same.   Thus, the Court must determine whether those rights were clearly established at the time the alleged violation occurred.   See Palisano v. City of Clearwater, 219 F. Supp. 2d 1249, 1256 (M.D. Fla. 2002), *aff'd,* 62 Fed. Appx. 320 (11th Cir. 2003).

In Palisano, 219 F. Supp. 2d 1249, the court recognized that, in the Eleventh Circuit, "the right to be free from sexual harassment in the workplace" was "clearly established" in Cross v. State of Alabama, 49 F.3d 1490 (11th Cir. 1995), in which the court held:

> The relevant question is whether a reasonable person in Horsley's position as Commissioner could have believed that doing nothing in response to knowledge of a subordinate director's sexual harassment and discrimination and the creation of a hostile work environment at a facility was lawful, in light of clearly established law. E.g. Busby, 931 F.2d at 773. Horsley's subjective beliefs are irrelevant. Busby, 931 F.2d at 773. We conclude that a reasonable person in Horsley's position could not have believed doing nothing in light of Stricklin's conduct was lawful, in light of the clearly established law that sexual harassment and discrimination was an infringement of legal rights.
>
> We hold that the district court correctly rejected Horsley's contention that he was entitled to qualified immunity.

Cross, 49 F.3d at 1503-04; see also Hill, 797 F.3d at 979 (recognizing the "clearly established principle" that "deliberate indifference to sexual harassment is an equal protection violation.") (citing Doe v. Sch. Bd. of Broward Cty., Fla., 604 F.3d 1248, 1261 (11th Cir. 2010)). Based on the foregoing, the right to be free from sexual harassment in the workplace/educational setting and the fact that deliberate indifference to sexual harassment constitutes an equal protection violation were both clearly established at the time of the alleged violations. Thus, neither Goslings nor Trimm is entitled to

qualified immunity, and Defendants' motion to dismiss Plaintiff's § 1983 claim on this ground is due to be denied.

D. **Statutes of Limitations Under Title IX and § 1983**.

Next, Defendants argue that "some of [Plaintiff's] allegations of [sexual] harassment are untimely under the two-year statute of limitations applicable to Title IX and § 1983". (Doc. 20 at 21).   Plaintiff agrees that the applicable statute of limitations for his Title IX and § 1983 claims is two years but states that, when taken as a whole and considered in context, the facts in the amended complaint establish that his Title IX and § 1983 sexual harassment and retaliation claims are timely.   (Doc. 27 at 27).

As the parties have stated, the statute of limitations for Plaintiff's Title IX and § 1983 claims is governed by Alabama's two-year personal injury statute of limitations.   See Hurt v. Shelby County Bd. of Educ., 198 F. Supp. 3d 1293, 1315 (N.D. Ala. 2016) (Title IX); Bracy v. City of Prichard, Ala., 2017 U.S. Dist. LEXIS 185907, *6, 2017 WL 5196609, *2 (S.D. Ala. 2017) (§ 1983).

Plaintiff's complaint was filed on January 12, 2018, and the amended complaint describes sexual harassment by Goslings beginning as early as August of 2014, during Plaintiff's first year of residency.   (Doc. 17 ¶ 14).   In their motion to dismiss, Defendants argue that the Court should bar from consideration and dismiss any incidents alleged in Plaintiff's Title IX and § 1983 claims that occurred more than two years before Plaintiff's complaint was filed.   (Doc. 20 at 22).   Plaintiff responds that he is entitled

to discovery to prove the exact dates of the underlying events, and
that any issue regarding the timeliness of his claims should be
reserved for summary judgment.  The Court agrees with Plaintiff for
two reasons.

First, the nature of this case involves allegations of on-
going sexual harassment and retaliation.  Because there is a need
for discovery on the facts underlying Plaintiff's claims, and
because it is not apparent from the face of the complaint that
Plaintiff's claims are time barred, any arguments for dismissal
based on the timeliness of Plaintiffs' Title IX and ¶ 1983 claims
are premature and better suited for summary judgment consideration.
See generally McMillian v. AMC Mortg. Servs., Inc., 560 F. Supp.
2d 1210, 1213 (S.D. Ala. 2008) ("A statute of limitations defense
is generally not appropriate for evaluation on a Motion to Dismiss
filed pursuant Rule 12(b)(6), Fed. R. Civ. P.;" "a Rule 12(b)(6)
dismissal on statute of limitations grounds is appropriate only if
it is apparent from the face of the complaint that the claim is
time-barred."); Greenwell v. Univ. of Alabama Bd. of Trustees, 2012
U.S. Dist. LEXIS 118917, *43, 2012 WL 3637768, *12 (N.D. Ala. Aug.
22, 2012)("[A] determination of whether Plaintiff's Title IX claim
against the UA Board of Trustees is barred by the two-year statute
of limitations or subject to the continuing violation doctrine
proves difficult at this point because the factual contours of
Plaintiff's Title IX claim are unclear and the facts have yet to
be developed. Therefore, resolution of this issue is more
appropriate for summary judgment analysis."); Agostinelli v. Fifth

<u>Third Bank</u>, 2011 U.S. Dist. LEXIS 155685, *29-30, 2011 WL 2119099, *9 (S.D. Ala. May 11, 2011), *report and recommendation adopted*, 2011 WL 2160179 (S.D. Ala. May 26, 2011) ("In this case, FTB's negligence action may well be time-barred; however, at this juncture, it is not clear when the alleged injury to FTB occurred . . . . [B]ecause it is not apparent on the face of the pleadings that FTB's negligence is time-barred, the undersigned recommends that Defendants' motion be denied as premature at this juncture.").

Second, this case involves allegations of on-going harassment and retaliation. "A claim of hostile work environment based on harassment 'will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [appropriate] time period.'" <u>Montoya</u>, 2018 U.S. Dist. LEXIS 168593 at *38, 2018 WL 4701795 at *12 (quoting <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 (2002); and <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1221 (11th Cir. 2001) ("'continuing violation' doctrine permits a plaintiff to pursue an otherwise time-barred claim where at least one other violation occurred within the statutory period.").

Accordingly, for each of these reasons, Defendants' motion to dismiss on this ground is due to be denied.

### E. <u>Punitive Damages Under Title IX and § 1983</u>.

Next, Defendants argue that Plaintiff's claim for punitive damages is due to be dismissed because punitive damages are not available in a Title IX action, nor are they available in a § 1983

action absent allegations that Defendants acted with callous disregard for Plaintiff's rights. (Doc. 20 at 22). Plaintiff responds that punitive damages are allowed in a § 1983 claim when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others, and that the amended complaint sufficiently alleges such conduct by Defendants. (Doc. 27 at 29).

While punitive damages are not available under § 1983 from a municipality, see Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), they are available in a suit against an official personally, see Smith v. Wade, 461 U.S. 30, 35 (1983); accord Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985). Indeed, allegations of "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law," are sufficient to support a claim for punitive damages under § 1983. Smith, 461 U.S. at 51.

In the instant case, the amended complaint alleges facts from which one can reasonably infer that Defendants were, at a minimum, reckless or callously indifferent to Plaintiff's rights, specifically including Plaintiff's allegations that Goslings gave him uncharacteristically low evaluations and withheld evaluations in retaliation for his refusal to accept her sexual advances and in retaliation for his complaints to others about her unlawful

actions; that Trimm, Goslings' supervisor, threatened Plaintiff with dismissal from the medical residency program and physical violence if Plaintiff did not cease his complaints about Goslings' sexual harassment; and that Trimm, at the behest of Goslings, placed Plaintiff on probation because Plaintiff did not acquiesce in or cease complaining about Goslings' unwanted sexual advances and retaliatory conduct.    Thus, Defendants' motion to dismiss Plaintiff's claim for punitive damages under § 1983 is due to be denied.

With respect to Defendants' argument that punitive damages are not recoverable in a Title IX action, this appears to be an issue of first impression in the Eleventh Circuit.[17]    However, at least one district court in this Circuit has held that "punitive damages are not available against a school district for violations of Title IX."    See Bullard v. DeKalb Cty. Sch. Dist., 2006 WL 8432670, *4 (N.D. Ga. Feb. 9, 2006) (citing Hart v. Paint Valley Local School District, 2002 U.S. Dist. LEXIS 25720, *57, 2002 WL 31951264, * 16 (S.D. Ohio Nov. 15, 2002); Hooper v. North Carolina, 379 F. Supp. 2d 804, 811 (M.D.N.C. 2005) (holding that the plaintiff "may not assert a claim for punitive damages under Title VI, Title VII or Title IX."); see also Mercer v. Duke Univ., 50 Fed. Appx. 643, 644 (4th Cir. 2002)("the Supreme Court's conclusion in Barnes [v. Gorman, 536 U.S. 181 (2002)], that punitive damages are not

---

[17] Plaintiff does not respond to this argument.   (Doc. 27 at 29).

available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX."). Thus, to the extent that Plaintiff seeks punitive damages under Title IX, Defendants' motion to dismiss said claim is due to be granted.

### F. Defendant McQuiston.

Next, Defendants argue that Defendant McQuiston is due to be dismissed because he has not been served and because Plaintiff does not dispute that he has failed to state a claim against McQuiston. (Doc. 20 at 1; Doc. 28 at 15). The Court agrees.

This action was filed on January 12, 2018. (Doc. 1). To date, Defendant McQuiston has not been served. Federal Rule of Civil Procedure 4(m) provides in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In the instant case, Plaintiff has neither shown good cause for the lack of service, nor has he requested additional time within which to serve McQuiston. More importantly, Plaintiff has not opposed Defendants' motion to dismiss the claims against McQuiston. (Doc. 27).

Thus, the Court finds that Plaintiff has failed to comply with Rule 4(m), Fed.R.Civ.P., and has abandoned his claims against McQuiston. See generally Pacific Tech Constr., Inc. v. Sauer, Inc., 2018 U.S. Dist. LEXIS 160827, *4, 2018 WL 4501738, *2 n.2 (M.D. Fla. Sept. 20, 2018) ("The Court could consider the claim in Count II abandoned simply because Plaintiff failed to respond to Defendant's arguments in support of dismissal.")(citing A1 Procurement v. Hendry Corp., 2012 U.S. Dist. LEXIS 176624, *7, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) ("The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim."); Hooper v. City of Montgomery, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (treating as abandoned, and dismissing, claims defendant sought to be dismissed due to plaintiff's failure to respond to defendant's arguments)).

Accordingly, Defendants' motion to dismiss Plaintiff's claims against Defendant McQuiston is due to be granted.

## IV. Conclusion

For the reasons discussed herein, the undersigned hereby RECOMMENDS that Defendants' Motion to Dismiss (Doc. 20) be granted in part and denied in part as follows:

(1) Defendants' Motion to Dismiss Plaintiff's Petition for a Writ of Mandamus (Count One) is due to be granted in part: Defendants' motion to dismiss the mandamus petition is due to be granted, but Plaintiff's request for injunctive relief remains;

(2) Defendants' Motion to Dismiss Plaintiff's Title IX Claims (Counts Two and Four) is due to be granted in part: Plaintiff's Title IX claims (Counts Two and Four) against the individual Defendants, Goslings and Trimm, are due to be dismissed;[18] in addition, Plaintiff's Title IX retaliation claim (Count Four), which is asserted only against Defendant Trimm, is due to be dismissed in its entirety;

(3) Defendants' Motion to Dismiss Plaintiff's § 1983 Claims (Count Three) is due to be denied;

(4) Defendants' Motion to Dismiss Plaintiff's claim for punitive damages is due to be granted as to Plaintiff's Title IX claims and denied as to Plaintiff's § 1983 claims;

(5) Defendants' Motion to Dismiss Plaintiff's claims against Defendant McQuiston is due to be granted.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a]

---

[18] As previously noted, Plaintiff's Title IX gender discrimination/sexual harassment claim (Count Two) against Defendant South remains.

party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **4th** day of **December, 2018.**

/s/ SONJA F. BIVINS
UNITED STATES MAGISTRATE JUDGE